IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MOLLY MARIE W.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civ. No. 6:19-cv-00566-SU

OPINION & ORDER

SULLIVAN, Magistrate Judge:

Plaintiff Molly Marie W. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. All parties have consented to magistrate judge jurisdiction in this case. ECF No. 5. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On May 14, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on May 15, 2014. Tr. 13. The claims were denied initially and upon reconsideration. *Id.* At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on November 15, 2017. *Id.* On March 14, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 25. The Appeals Council denied

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, May 15, 2014. Tr. 15. The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease with total disc arthropathy; degenerative joint disease of the knee; and headaches. *Id.* The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 17.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following additional restrictions: she can occasionally balance, stoop, crouch, kneel, and crawl; she can frequently climb ramps and stairs, but can never climb ladders, ropes, and scaffolds; and she cannot tolerate exposure to hazards such as machinery and unprotected heights. Tr. 18.

Plaintiff was 38 years old on the alleged onset date. Tr. 23. She has limited education and is able to communicate in English. *Id.* The ALJ determined that Plaintiff was unable to perform her past relevant work. *Id.* At step five of the sequential analysis, the ALJ determined that Plaintiff was able to perform work as a document preparer, a bench handler, or a charge account clerk. Tr. 23-24. Accordingly, the ALJ determined Plaintiff was not disabled. Tr. 24-25.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that

supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) failing to find Plaintiff's wrist impairment severe at step two of the sequential analysis; and (3) improperly assessing the medical opinion evidence.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In this case, Plaintiff testified that she is in pain every day. Tr. 46. She experiences headaches "literally almost every day." Tr. 47. Plaintiff's physician told her the headaches are tension headaches and they are probably related to Plaintiff's neck issues. Tr. 52. Plaintiff testified that it is "a rare day" when she doesn't have a headache and that the pain causes light sensitivity and makes driving difficult. Tr. 53.

Plaintiff has a hard time "keeping things straight," and relies on text message reminders from her mother-in-law. Tr. 51-52. Her pain interferes with her ability to pay attention and complete tasks. Tr. 54. "There'd be nothing I would be able to absorb." Tr. 57. Plaintiff testified that she is "100% unreliable at this point," and that she "can't guarantee that I would be able to function . . . on any given day." Tr. 55.

Plaintiff had emergency surgery on her neck and has since lost range of motion in her neck which makes driving and other daily tasks difficult. Tr. 48. Plaintiff has done physical therapy for her neck and will be returning to physical therapy for more treatment. Tr. 52. Plaintiff has pain in both wrists, but the pain is more severe in her right wrist. Tr. 51. She has a limited range of motion with her right wrist and she has difficulty gripping with her right hand which causes her

to drop things.  *Id.*  Plaintiff has also had back surgery, but continues to feel pain when bending, walking, or sitting.  Tr. 49.  Plaintiff testified that she was not sure how long she could stand without needing a break because her pain varies from day to day but estimated that she would not be able to stand for long.  Tr. 49-50.  Plaintiff estimated that she could lift weight equivalent to a gallon of milk on a regular basis.  Tr. 52.

Plaintiff testified that she can do some of the household chores but needs her husband's assistance because she has difficulty bending and using her arms.  Tr. 50.  Plaintiff testified that she is sometimes unable to do housework at all and that she "barely do[es] anything at home."  Tr. 54, 57.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence" and with evidence of Plaintiff's daily activities.  Tr. 19, 21.

### A.  Conflict with the Medical Record

The ALJ's first reason for discounting Plaintiff's testimony concerns conflict with the objective medical evidence.  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle*, 533 F.3d at 1161.

With respect to Plaintiff's mobility and wrist issues, treatment notes from June 2014 show normal gait on tandem walk, with difficulty on heel-to-toe walk.  Tr. 895.  Her grip strength was 4+/5 bilaterally with normal lower strength in her lower extremities.  *Id.*  "Hip flexion, quads,

hams, dorsiflexion, and plantar flexion all intact." *Id.* An examination in November 2014 revealed a normal gait, good balance and a normal degree of coordination. Tr. 306. The examiner found a positive straight leg raise in the right leg, but normal muscle tone and no evidence of atrophy in either lower extremity with a full range of motion in hips, knees, ankles, and feet. Tr. 307. An examination in May 2015 also found a normal range of motion. Tr. 931.

Treatment notes from July 2015 showed all muscle groups "symmetric with normal 5/5 strength." Tr. 386. Plaintiff displayed normal gait including tandem walking and Plaintiff was able to walk on her heels and toes. *Id.* Plaintiff also demonstrated a full range of motion on a musculoskeletal exam, except for a "slightly decreased C-spine range of motion." *Id.* A treatment note from October 2016 indicated 5-/5 strength in Plaintiff's hands "with normal and equal strength for wrist extension against resistance," Tr. 691, although in June 2016 Plaintiff's treatment notes indicated a tremor in Plaintiff's hands, with the right hand greater than the left. Tr. 733.

As to Plaintiff's mental function, Plaintiff was examined by a neurosurgeon in June 2014 and the examiner recorded intact memory, normal concentration, and normal attention span. Tr. 895. In May 2015, an examiner similarly found normal mood, affect, judgment, and behavior. Tr. 931. An examination in January 2016 also found "sound reasoning and judgment." Tr. 361.

On this record, the Court concludes that the ALJ reasonably considered the objective medical evidence in assessing Plaintiff's subjective symptom testimony.

### B. Activities of Daily Living

Consideration of daily activities is proper when they indicate activity or skills that are transferable to the workplace, or when the activities contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty

functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In the present case, Plaintiff's function report indicates that she cares for her son, does housework, prepares meals, cleans laundry, and washes dishes. Tr. 211-13. Plaintiff reported that she goes out every day, drives a car, and goes shopping. Tr. 213. She reported that she can manage her own finances, and that she is "frequently" involved with her son's sporting events. Tr. 214. Plaintiff attends ball games and barbeques. *Id.* Plaintiff told her therapist that she "tries to keep busy with sign painting." Tr. 1052.

Although Plaintiff's daily activities indicate that she has difficulty functioning, the ALJ reasonably concluded that they contradicted Plaintiff's other testimony. The Court concludes that the ALJ reasonably considered Plaintiff's daily activities in assessing Plaintiff's subjective symptom testimony.

## II.   Step Two

Plaintiff contends that the ALJ erred by finding her wrist impairment to be non-severe at step two of the sequential analysis. A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). As noted, a plaintiff bears the burden of establishing the existence of a severe impairment at step two and to show that any error by the ALJ is harmful. *Bustamante*, 262 F.3d at 953; *Shinseki*, 556 U.S. at 409.

Courts have held that step two is "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Step two "is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in

assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." *Id.* at 1048-49 (internal quotation marks and citations omitted).

The Ninth Circuit has held that when the ALJ has resolved step two in the claimant's favor, any error in designating specific impairments as severe at step two does not prejudice a claimant if the ALJ considered the impairments when formulating the RFC. *See, e.g., Vivian v. Saul*, 780 F. App'x 526, 527 (9th Cir. 2019) ("Any error at step two in failing to list Vivian's hand, knee, and hip impairments and spinal osteoarthritis was harmless because the ALJ resolved step two in Vivian's favor and considered all of his symptoms in formulating the residual functional capacity."); *Buck*, 869 F.3d at 1049 ("[S]tep two was decided in [the plaintiff's] favor after both hearings. He could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand.") (citation omitted).

In the present case, the ALJ considered Plaintiff's wrist condition at step two of the sequential analysis but noted that Plaintiff's treatment records indicated 5/5 strength with intact sensation and that her physician opted to observe Plaintiff's wrist condition without intervention. Tr. 15-16. This assessment is supported by the medical record. Tr. 477, 658. Despite finding Plaintiff's wrist condition non-severe, the ALJ expressly "considered the claimant's testimony of her upper extremity symptoms in assessing the residual functional capacity," although the ALJ did not assign any functional limitations directly related to that impairment. Tr. 16, 18, 19.

On this record, the Court concludes that the ALJ did not err by finding Plaintiff's wrist impairment to be non-severe at step two. Even if the ALJ had erred, any such error would have been harmless because step two was resolved in Plaintiff's favor and the ALJ expressly stated that the wrist impairment was considered in formulating Plaintiff's RFC.

### III.   Medical Opinion Evidence

Plaintiff contends that the ALJ erred by discounting the opinion of Plaintiff's treating physician, Bryce Cleary, M.D. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* In the present case, the parties agree that Dr. Cleary's opinion was contradicted and so the "specific and legitimate" standard applies. Pl. Reply at 5, ECF No. 17; Def. Br. at 12, ECF No. 16.

Dr. Cleary prepared a medical source statement concerning Plaintiff's functional limitations in September 2015. Tr. 292-96. Dr. Cleary opined that Plaintiff could walk for a single block without rest or severe pain and that Plaintiff could sit for ten minutes before needing to get up and could stand for five minutes without needing to change positions. Tr. 293. Dr. Cleary reported that Plaintiff would be able to sit, stand, or walk for less than two hours in an eight-hour workday and that she would require a job that permitted her to change position at will. *Id.* Dr. Cleary stated that Plaintiff would need to walk for five minutes every ten minutes and that she would need a fifteen-minute break every fifteen minutes due to pain, muscle weakness, and chronic fatigue. *Id.* Dr. Cleary stated that Plaintiff would require a cane or other assistive device due to imbalance, pain, and weakness. Tr. 294. Dr. Cleary reported that Plaintiff could never lift weight,

including weights under ten pounds, and could never twist, scoop, crouch, squat, or climb stairs and ladders. *Id.* Dr. Clearly assessed substantial limitations to Plaintiff's ability to use her hands, arms, and fingers. *Id.* Dr. Cleary opined that Plaintiff would be "off task" more than 25% of the time and that she would miss four or more days per month. Tr. 296.

The ALJ assigned "partial weight" to Dr. Cleary's opinion, noting that it was "inconsistent with the record as a whole, including the objective findings on physical examination, imaging evidence, and evidence of the claimant's daily living activities." Tr. 22.

The ALJ may consider the consistency of an opinion with the record as a whole. *Orn*, 495 F.3d at 631. As noted in the previous section, Plaintiff's treatment records frequently indicated normal strength in her hands and arms, as well as normal gait. *See, e.g.,* Tr. 307, 386, 895. The ALJ reasonably concluded that Plaintiff's medical records were inconsistent with the extreme limitations assessed by Dr. Cleary. The ALJ may also consider whether the restrictions assessed by the physician are inconsistent with the plaintiff's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). As discussed in the previous section, Plaintiff did housework, drove, went shopping, and engaged in other activities that were inconsistent with the level of restriction assessed by Dr. Cleary. On this record, the Court concludes that the ALJ reasonably discounted Dr. Cleary's opinion.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this 25th day of August 2020.

        /s/ Patricia Sullivan
        PATRICIA SULLIVAN
        United States Magistrate Judge